1

2

3

4

5

6

7

8                       **UNITED STATES DISTRICT COURT**

9                         EASTERN DISTRICT OF CALIFORNIA

10

11   BRINT CLARK,                                **Case No.  1:15-cv-00350-JLT (PC)**

12              Plaintiff,                         **ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND**

13        v.                                      **(Docs. 15, 17)**

14   BRAZELTON, et al.,                           **30-DAY DEADLINE**

15              Defendants.

16

17   **I.     Background**

18        In the First Amended Complaint,[1] Plaintiff again alleges causes of action against several

19   correctional officers of the California Department of Corrections and Rehabilitation at Pleasant

20   Valley State Prison for improperly identifying him as a member of the Black Gorilla Family gang

21   when, in fact, he is a member of the Crips gang.  (Doc. 17.)  The Court finds the First Amended

22   Complaint fails to state a claim and **DISMISSES** it with leave to amend.

23        **A.     Screening Requirement**

24        The Court is required to screen complaints brought by prisoners seeking relief against a

25   governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

26   Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

27   _____

28   [1] The filing of the First Amended Complaint resolved the order to show cause that issued when Plaintiff failed to file it within the granted extension of time.  (Doc. 15.)

1

1   frivolous, malicious, fail to state a claim upon which relief may be granted, or that seek monetary

2   relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2); 28 U.S.C.

3   § 1915(e)(2)(B)(i)-(iii).

4        Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or

5   immunities secured by the Constitution and laws of the United States."  *Wilder v. Virginia Hosp.*

6   *Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983).  Section 1983 is not itself a source of

7   substantive rights, but merely provides a method for vindicating federal rights conferred

8   elsewhere. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989).

9        To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a

10   right secured by the Constitution or laws of the United States was violated and (2) that the alleged

11   violation was committed by a person acting under the color of state law.  *See West v. Atkins*, 487

12   U.S. 42, 48 (1988); *Ketchum v. Alameda Cnty.*, 811 F.2d 1243, 1245 (9th Cir. 1987).

13        **B.**    **Summary of Plaintiff's Complaint**

14        Though he is now housed at California Correctional Institute , Plaintiff complains of acts

15   that occurred while he was housed at Pleasant Valley State Prison.  Plaintiff names the following

16   four Defendants in this action:  PVSP Warden, PD Brazelton; Lieutenants A. Shimmin and Duty;

17   Sergeant A. Avila; and Correctional Officer M. Seese.  Plaintiff seeks monetary and declaratory

18   relief.

19        Plaintiff identifies two Causes of Action/Claims:  (1) violation of the Eighth Amendment's

20   prohibition of cruel and unusual punishment (excessive force); and (2) violation of his rights to

21   due process under the Fourteenth Amendment.  These claims appear premised on Plaintiff's claim

22   that prison officials erroneously identified him as a member of the Black Gorilla Family when he

23   is actually a member of the Crips gang.

24        As discussed in further detail below, the First Amended Complaint fails to state a

25   cognizable claim against any of the named defendants.  Plaintiff may be able to state cognizable

26   claims and is being given **one last opportunity** to correct his pleading deficiencies by filing a

27   second amended complaint which must be **20 pages or less**.  To assist Plaintiff's efforts, the Court

28   is providing him here the applicable pleading requirements and legal standards that apply to the

1    claims he has identified.

2    **C.      Pleading Requirements**

3    **1. Federal Rule of Civil Procedure 8(a)**

4    "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited

5    exceptions," none of which applies to section 1983 actions. *Swierkiewicz v. Sorema N. A.*, 534

6    U.S. 506, 512 (2002); Fed. R. Civ. Pro. 8(a).  A complaint must contain "a short and plain

7    statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. Pro. 8(a).

8    "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and

9    the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512.

10   Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a

11   cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556

12   U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

13   Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is

14   plausible on its face.'" *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 555.  Factual

15   allegations are accepted as true, but legal conclusions are not. *Iqbal.* at 678; *see also Moss v. U.S.*

16   *Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009); *Twombly*, 550 U.S. at 556-557.

17   While "plaintiffs [now] face a higher burden of pleadings facts . . . ," *Al-Kidd v. Ashcroft*,

18   580 F.3d 949, 977 (9th Cir. 2009), the pleadings of pro se prisoners are still construed liberally

19   and are afforded the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

20   However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," *Neitze*

21   *v. Williams*, 490 U.S. 319, 330 n.9 (1989), "a liberal interpretation of a civil rights complaint may

22   not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit*

23   *Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) quoting *Ivey v. Bd. of Regents*, 673 F.2d 266,

24   268 (9th Cir. 1982), and courts are not required to indulge unwarranted inferences, *Doe I v. Wal-*

25   *Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation

26   omitted).  The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and

27   "facts that are 'merely consistent with' a defendant's liability" fall short of satisfying the

28   plausibility standard. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949; *Moss*, 572 F.3d at 969.

3

1       As discussed in greater detail below, Plaintiff's First Amended Complaint is a bit too brief

2   as he fails to link the Defendants to his allegations and to give sufficient description of the events

3   underlying his claim to discern which Defendant he feels engaged in what activities that

4   amounted to a violation of his rights.  His second amended complaint must state which of his

5   constitutional rights he feels were violated by each Defendant and its factual basis, and he must

6   do so in **no more than 20 pages**.

7                    **2.  Linkage Requirement**

8       Plaintiff seeks to proceed under the Civil Rights Act.  The Act provides:

9       Every person who, under color of [state law] . . . subjects, or causes to be
        subjected, any citizen of the United States . . . to the deprivation of any rights,
10      privileges, or immunities secured by the Constitution . . . shall be liable to the
        party injured in an action at law, suit in equity, or other proper proceeding for
11      redress.

12  42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

13  actions of the defendants and the deprivation alleged to have been suffered by Plaintiff.  *See*

14  *Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362

15  (1976).  The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a

16  constitutional right, within the meaning of section 1983, if he does an affirmative act, participates

17  in another's affirmative acts or omits to perform an act which he is legally required to do that

18  causes the deprivation of which complaint is made."  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th

19  Cir. 1978).  In order to state a claim for relief under section 1983, Plaintiff must link each named

20  defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's

21  federal rights.

22      The only defendant named in Plaintiff's allegations is Officer Seese.  Other than that,

23  Plaintiff generally refers to "Defendants," which is insufficient to place any of the Defendants on

24  notice as to what he claims they did--or failed to do—that Plaintiff feels amounted to a violation

25  of his federal rights.  Plaintiff must clearly state which Defendant(s) he feels are responsible for

26  each violation of his constitutional rights and their factual basis as his Complaint must put each

27  Defendant on notice of Plaintiff's claims against him or her.  *See Austin v. Terhune*, 367 F.3d

28  1167, 1171 (9th Cir. 2004).

4

1

**D.      Claims for Relief**

2

**1. Eighth Amendment**

3

"The treatment a prisoner receives in prison and the conditions under which he is confined

4

are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832,

5

114 S.Ct. 1970 (1994) (citing *Helling v. McKinney*, 509 U.S. 25, 31 (1993).  Prison officials have

6

a duty "to take reasonable measures to guarantee the safety of inmates, which has been interpreted

7

to include a duty to protect prisoners." *Labatad v. Corrections Corp. of America*, 714 F.3d 1155,

8

1160 (citing *Farmer*, 511  U.S. at 832-33; *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir.

9

2005)).

10

To establish a violation of this duty, the prisoner must "show that the officials acted with

11

deliberate indifference to threat of serious harm or injury to an inmate." *Labatad*, at 1160 (citing

12

*Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002).  This involves both objective

13

and subjective components.

14

Objectively, the alleged deprivation must be "sufficiently serious" and where a failure to

15

prevent harm is alleged, "the inmate must show that he is incarcerated under conditions posing a

16

substantial risk of serious harm." *Id.* at 834, quoting *Rhodes v. Chapman*, 452 U.S. 337, 349, 101

17

S.Ct. 2392 (1981).  Subjectively, the prison official must "know of and disregard an excessive

18

risk to inmate health or safety." *Id.* at 837; *Anderson v. County of Kern*, 45 F.3d 1310, 1313 (9th

19

Cir. 1995).  A prison official must "be aware of facts from which the inference could be drawn

20

that a substantial risk of serious harm exists, and . . . must also draw the inference." *Farmer*, 511

21

U.S. at 837, 114 S.Ct. 1970.  Liability may follow only if a prison official "knows that inmates

22

face a substantial risk of serious harm and disregards that risk by failing to take reasonable

23

measures to abate it." *Id.* at 847, 114 S.Ct. 1970.

24

Further, the Supreme Court has stated that a remedy for unsafe conditions need not await

25

a tragic event; rather, where a risk/injury has yet to occur, the plaintiff's burden would be to prove

26

that his future health/safety is unreasonably endangered, "that it is contrary to current standards of

27

decency for anyone to be so exposed against his will, and that prison officials are deliberately

28

indifferent to his plight." *Helling*, 509 U.S. at 33-35.

1    The question under the Eighth Amendment is whether prison officials, acting with

2  deliberate indifference, exposed a prisoner to a sufficiently substantial "risk of serious damage to

3  his future health . . . ." *Farmer*, at 843 (citing *Helling*, 509 U.S. at 35).  The Supreme Court has

4  explained that "deliberate indifference entails something more than mere negligence . . . [but]

5  something less than acts or omissions for the very purpose of causing harm or with the knowledge

6  that harm will result." *Id.*, at 835.  The Court defined this "deliberate indifference" standard as

7  equal to "recklessness," in which "a person disregards a risk of harm of which he is aware." *Id.*,

8  at 836-37.

9    Being incorrectly identified as a prison gang member carries a sufficiently serious risk of

10  serious harm from violence at the hands of other prison gang members.  However, Plaintiff's

11  allegations fail to support which Defendant knew he was not a member of the Black Gorilla

12  Family when they housed him with that gang, which Defendant knew that he was, instead, a

13  member of the Crips gang, and to which Defendant he complained about being placed with the

14  wrong gang.  His allegations must, but do not, state what each Defendant knew about his

15  placement with the Black Gorilla Family and the allegations must support that each Defendant

16  acted with deliberate indifference to a substantial risk of serious harm to Plaintiff.

17                    **2.  Fourteenth Amendment -- Due Process**

18    Plaintiff's allegations under his Due Process claim are exceedingly sparse and vague.  The

19  Court is unable to distinguish whether Plaintiff is complaining that his due process rights were

20  violated in a hearing that resulted in his placement with the wrong prison gang, or if he is

21  complaining of the actions of supervisors in ruling on and/or processing his inmate appeals when

22  the incident occurred.

23                        **a. Gang Validation**

24    The Due Process Clause protects prisoners from being deprived of liberty without due

25  process of law.  *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  The Due Process Clause itself

26  does not confer on inmates a liberty interest in being confined in the general prison population

27  instead of segregation.  *See Hewitt v. Helms*, 459 U.S. 460, 466-68 (1983) (overruled on other

28  grounds by *Sadin v. Conner*, 515 U.S. 472 (1995)).  Liberty interests created by state law are

6

1  limited to freedom from restraint which "imposes atypical and significant hardship on the inmate

2  in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

3  Prisoners may be housed in Administrative Segregation to protect them from other

4  inmates, to protect other inmates from the segregated prisoner, or pending investigation of

5  disciplinary charges, transfer, or classification. *Hewitt*, 459 U.S. at 468. Thus, the initial

6  placement of Plaintiff in Ad-Seg (*see* Doc. 34, 1stAC, 11:18-21) for investigation of gang

7  validation does not rise to the level of a cognizable claim for violation of Plaintiff's rights to due

8  process.

9  The assignment of gang members to the Security Housing Unit is an administrative

10  measure rather than disciplinary and is "essentially a matter of administrative discretion." *Bruce*

11  *v. Ylst*, 351 F.3d 1283, 1287 (9th Cir.2003) (quoting *Munoz v. Rowland*, 104 F.3d 1096, 1098 (9th

12  Cir.1997)).[2] Under California State Regulations, prison officials house an inmate routinely in

13  administrative segregation pending review of his gang status and if validated as a gang member,

14  the inmate may be assessed an indeterminate term in the Secured Housing Unit. 15 Cal.Code

15  Regs. § 3378. When determining whether a prisoner is to be segregated for administrative

16  reasons, due process only requires: (1) an informal non-adversary hearing within a reasonable

17  time after the prisoner is segregated; (2) that the prisoner be informed of the charges or reasons

18  for considering segregation; and (3) the prisoner must be allowed to present his views. *Bruce*,

19  351 F.3d at 1287 (citing *Toussaint v. McCarthy*, 801 F.2d 1080, 1099 (9th Cir.1986), abrogated in

20  part on other grounds by *Sandin v. Connor*, 515 U.S. 472 (1995)). Thereafter, prison officials

21  must periodically review the initial placement. *See Hewitt*, 459 U.S. at 477, n.9; *Toussaint*, 801

22  F.2d at 1101. Annual review of the placement is insufficient, but a court may not impose a 90-

23  day review period where prison officials have suggested a 120-day review period. *Toussaint*, 926

24  F.2d at 803.

25
26
27
28

[2] In his response (ECF No. 39) to the Order to Show Cause (ECF No. 38) why this action should not be dismissed as barred by Heck v. Humphry, 512 U.S. 477 (1994) Plaintiff asserted that this cause of action is controlled by Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001). However, Devereaux identifies a clearly established constitutional due process right not to be subjected to *criminal* charges on the basis of false evidence that was deliberately fabricated by the government. Since gang validation is an administrative measure, Devereaux is inapplicable to this case.

1    Further, where the basis for the administrative segregation is challenged and an inmate has

2    been given " 'some notice of the charges against him and an opportunity to present his views to

3    the prison official charged with deciding whether to transfer him to administrative segregation,'

4    the relevant issue is whether there was 'some evidence' to support [the] validation." *Bruce*, 351

5    F.3d at 1287, quoting *Toussaint*, 801 F.2d at 1099.

6                                      **b.  Inmate Appeals**

7    "[I]nmates lack a separate constitutional entitlement to a specific prison grievance

8    procedure." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in

9    processing of appeals because no entitlement to a specific grievance procedure), citing *Mann v.*

10   *Adams*, 855 F.2d 639, 640 (9th Cir. 1988).  "[A prison] grievance procedure is a procedural right

11   only, it does not confer any substantive right upon the inmates." *Azeez v. DeRobertis*, 568 F.

12   Supp. 8, 10 (N.D. Ill. 1982) *accord Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993); *see*

13   *also Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure

14   confers no liberty interest on prisoner).  "Hence, it does not give rise to a protected liberty interest

15   requiring the procedural protections envisioned by the Fourteenth Amendment." *Azeez v.*

16   *DeRobertis*, 568 F. Supp. at 10; *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

17   Actions in reviewing prisoner's administrative appeal cannot serve as the basis for liability

18   under a § 1983 action.  *Buckley*, 997 F.2d at 495.  The argument that anyone who knows about a

19   violation of the Constitution, and fails to cure it, has violated the Constitution himself is not

20   correct.  "Only persons who cause or participate in the violations are responsible.  Ruling against

21   a prisoner on an administrative complaint does not cause or contribute to the violation." *Greeno*

22   *v. Daley*, 414 F.3d 645, 656-57 (7th Cir.2005) *accord George v. Smith*, 507 F.3d 605, 609-10 (7th

23   Cir. 2007); *Reed v. McBride*, 178 F.3d 849, 851-52 (7th Cir.1999); *Vance v. Peters*, 97 F.3d 987,

24   992-93 (7th Cir.1996). Thus, since he has neither a liberty interest, nor a substantive right in

25   inmate appeals, Plaintiff is unable to state a cognizable claim merely for the processing and/or

26   reviewing of his 602 inmate appeals.

27                                     **3.  Supervisory Liability**

28   Supervisory personnel are generally not liable under section 1983 for the actions of their

8

1    employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a

2    supervisory position, the causal link between him and the claimed constitutional violation must be

3    specifically alleged.  *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*,

4    589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979).  To state a claim for relief

5    under section 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that

6    would support a claim that supervisory defendants either: personally participated in the alleged

7    deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or

8    promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of

9    constitutional rights' and is 'the moving force of the constitutional violation.'"  *Hansen v. Black*,

10   885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); *Taylor v. List*, 880 F.2d 1040, 1045

11   (9th Cir. 1989).  Under section 1983, liability may not be imposed on supervisory personnel for

12   the actions of their employees under a theory of *respondeat superior*.  *Iqbal*, 556 U.S. at 677.  "In

13   a § 1983 suit or a *Bivens* action - where masters do not answer for the torts of their servants - the

14   term 'supervisory liability' is a misnomer."  *Id.*  Knowledge and acquiescence of a subordinate's

15   misconduct is insufficient to establish liability; each government official is only liable for his or

16   her own misconduct.  *Id.*

17          "'[B]are assertions . . . amount[ing] to nothing more than a "formulaic recitation of the

18   elements" of a constitutional discrimination claim,' for the purposes of ruling on a motion to

19   dismiss [and thus also for screening purposes], are not entitled to an assumption of truth."  *Moss*,

20   572 F.3d at 969 (quoting *Iqbal*, 556 U.S. at 1951 (quoting *Twombly*, 550 U.S. at 555)).  "Such

21   allegations are not to be discounted because they are 'unrealistic or nonsensical,' but rather

22   because they do nothing more than state a legal conclusion – even if that conclusion is cast in the

23   form of a factual allegation."  *Id.*  Thus, allegations that supervisors—including Sergeant Avila or

24   Lieutenants Shimmin and Duty—are somehow liable because their subordinates violated

25   Plaintiff's rights are not cognizable.

26                          **a.  Supervisory Liability via Inmate Appeals**

27          In addition to that discussed in the immediately preceding section, "a plaintiff must show

28   the supervisor breached a duty to plaintiff which was the proximate cause of the injury.  The law

                                                9

1   clearly allows actions against supervisors under section 1983 as long as a sufficient causal

2   connection is present and the plaintiff was deprived under color of law of a federally secured

3   right." *Redman v. County of San Diego*, 942 F.2d 1435, 1447 (9th Cir. 1991)(internal quotation

4   marks omitted)(abrogated on other grounds by *Farmer v. Brennan*, 511 U.S. 825 (1994).

5          "The requisite causal connection can be established . . . by setting in motion a series of

6   acts by others," *id*. (alteration in original; internal quotation marks omitted), or by "knowingly

7   refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably

8   should have known would cause others to inflict a constitutional injury," *Dubner v. City & Cnty.*

9   *of San Francisco*, 266 F.3d 959, 968 (9th Cir.2001).  "A supervisor can be liable in his individual

10  capacity for his own culpable action or inaction in the training, supervision, or control of his

11  subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a

12  reckless or callous indifference to the rights of others." *Watkins v. City of Oakland*, 145 F.3d

13  1087, 1093 (9th Cir.1998) (internal alteration and quotation marks omitted).

14         Plaintiff may intend his allegations to allege that by reviewing Plaintiff's IAs on this issue,

15  various of the Defendants knew that he was placed with the wrong gang in deliberate indifference

16  of a substantial risk of serious harm.  If so, a plaintiff may "state a claim against a supervisor for

17  deliberate indifference based upon the supervisor's knowledge of and acquiescence in

18  unconstitutional conduct by his or her subordinates," *Starr v. Baca,* 652 F.3d 1202, 1207 (2011),

19  which may be shown via the inmate appeals process where the supervisor reviewed Plaintiff's

20  applicable inmate appeal and failed to take corrective action which allowed the violation to

21  continue.

22  **II.     CONCLUSION**

23         For the reasons set forth above, the First Amended Complaint is DISMISSED, with leave

24  to file a second amended complaint within thirty days.  If Plaintiff needs an extension of time to

25  comply with this order, he must file a motion seeking an extension of time no later than thirty

26  days from the date of service of this order.

27         Plaintiff must demonstrate in any first amended complaint how the conditions complained

28  of have resulted in a deprivation of Plaintiff's constitutional rights.  *See Ellis v. Cassidy*, 625 F.2d

1   227 (9th Cir. 1980).  The second amended complaint must allege in specific terms how each

2   named defendant is involved.  There can be no liability under section 1983 unless there is some

3   affirmative link or connection between a defendant's actions and the claimed deprivation.  *Rizzo*

4   *v. Goode*, 423 U.S. 362 (1976); *May v. Enomoto*, 633 F.2d 164, 167 (9th Cir. 1980); *Johnson v.*

5   *Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

6          Plaintiff's second amended complaint should be brief.  Fed. R. Civ. P. 8(a).  Such a short

7   and plain statement must "give the defendant fair notice of what the . . . claim is and the grounds

8   upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) quoting *Conley v.*

9   *Gibson*, 355 U.S. 41, 47 (1957).  Although accepted as true, the "[f]actual allegations must be

10  [sufficient] to raise a right to relief above the speculative level . . . ."  *Twombly*, 550 U.S. 127, 555

11  (2007) (citations omitted).

12          Plaintiff is further advised that an amended complaint supercedes the original, *Lacey v.*

13  *Maricopa County*, Nos. 09-15806, 09-15703, 2012 WL 3711591, at *1 n.1 (9th Cir. Aug. 29,

14  2012) (en banc), and must be "complete in itself without reference to the prior or superceded

15  pleading,"  Local Rule 220.

16          The Court provides Plaintiff with opportunity to amend to cure the deficiencies identified

17  in this order.  *Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  Plaintiff may not change

18  the nature of this suit by adding new, unrelated claims in his second amended complaint.  *George*

19  *v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).  His second amended

20  complaint **must not exceed 20 pages** in length.

21          Based on the foregoing, the Court **ORDERS**:

22          1.      The First Amended Complaint is **DISMISSED**, with leave to amend;

23          2.      The Clerk's Office shall send Plaintiff a civil rights complaint form;

24          3.      **Within 30 days** from the date of service of this order, Plaintiff must file a  second

25  amended complaint curing the deficiencies identified by the Court in this order; and

26  ///

27  ///

28  ///

11

4.       If Plaintiff fails to comply with this order, the Court will dismiss this action based upon Plaintiff's failure to obey a court order and for his failure to state a claim.

IT IS SO ORDERED.

Dated:   __November 12, 2015__                    ____/s/ Jennifer L. Thurston__
                                                                      UNITED STATES MAGISTRATE JUDGE

12